IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERT MITCHELL,                    }
                                    }
        Plaintiff,                  }
                                    }        CIVIL ACTION NO.
v.                                  }        07-AR-1959-S
                                    }
BEVILL STATE COMMUNITY              }
COLLEGE, et al.,                    }
                                    }
        Defendants.                 }

**MEMORANDUM OPINION**

Before the court is the motion of defendants, Bevill State
Community College ("Bevill State"), Pat Reeves ("Reeves"), Penne
Mott ("Mott") and Camilla J. Benton ("Benton"), to dismiss all
claims against the three individual defendants in the above-
entitled action for failure to state a claim upon which relief can
be granted pursuant to Fed. R. Civ. P. 12(b)(6).  These claims are
found in counts II and III of the complaint.  There is no motion by
Bevill State to dismiss count I in which it is the only defendant.
For the reasons that follow, the motion will be granted in part and
denied in part.

**Factual Allegations**[1]

Plaintiff, Robert Mitchell ("Mitchell"), enrolled as a student

---

[1] The recitation of facts is based on the allegations contained in the
complaint.  While the precise timeline in which the relevant events occurred
is not clear from the face of the complaint, the court has attempted to piece
together the various allegations to make a coherent narrative, always
resolving any ambiguity in favor of the non-moving party.

1

in Bevill State's nursing program on May 31, 2005.  On July 14, 2005, Mitchell was questioned about his insurance coverage with Medicare by Reeves, the supervisor of the nursing program, in the presence of two other students.  Although Mitchell did not want to discuss his disability or the medications he was taking, Reeves threatened to kick him out of the nursing program if he did not answer her questions.   Upon Mitchell's disclosure of his disability, Reeves informed him that he could not remain in the program.  Reeves also told Mitchell that she did not believe that narcotics should be administered outside of a hospital environment. Reeves discussed Mitchell's disability and his medications with another Bevill State staff member and with Mott, the dean of nursing.  After Mitchell was removed from the program, he presented Bevill State with medical documentation and an e-mail from the Alabama Board of Nursing stating that his disability and his use of prescribed medications to treat the disability could not be the basis for excluding him from the program.  Mitchell was reinstated to the nursing program soon thereafter.

At some point before the end of the 2005 fall semester, Mitchell was subjected to a random drug test.  Before the drug test, he informed the tester of the prescription medications that he was taking.  A few days later, Mitchell was told that he had tested positive for oxycodone and that no allowance would be made for prescriptions.   After failing another drug test, Reeves

2

presented Mitchell with two options: 1) to voluntarily "drop out" with passing grades or 2) to take another drug test with the understanding that he could not offer his prescriptions as an excuse in the event he tested positive.  Mitchell was told that he would be terminated from the program if he refused to take the drug test.  A police officer and a doctor were present when Reeves presented these options to Mitchell. After hearing his choices, Mitchell requested a copy of Bevill State's official policies and asked to speak with a representative from the Alabama Disability Program.  However, Reeves told Mitchell that he was taking too much time and signed a paper for him that signified that he was removed from the nursing program.

On December 12, 2005, Mitchell filed a letter requesting an administrative review of his dismissal.  Benton, the administrative vice president of Bevill State, upheld the dismissal.  In response, Mitchell requested a grievance hearing in accordance with the college's policy.  Mitchell received no response.

Mitchell filed a *pro se* complaint in this court on October 30, 2007.   He  asserts  the  following  claims:  1)  disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* and the Rehabilitation Act of 1973, 20 U.S.C. § 701, *et seq.* against Bevill State, 2) violation of 42 U.S.C. § 1983 against Mott and Benton, and 3) the Alabama tort of invasion of privacy against Reeves. In addition to compensatory,

actual, and statutory damages, Mitchell seeks a declaratory judgment stating that defendants' "practices, policies, and procedures in the past have prevented, and continue to prevent, Plaintiff from fully accessing [the] Bevill State Nursing Program." Mitchell also seeks a permanent injunction requiring "defendant, its agents, servants, and employees, and all persons acting in concert with defendant to eliminate all barriers . . . that prevent plaintiff from entering and participating in Bevill State Community College['s] Nursing Program."

## Discussion

*Standard of Review*

Under the Supreme Court's new pleading standard, in order to survive a 12(b)(6) motion, a plaintiff must allege "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, -- U.S. —-, 127 S. Ct. 1955, 1965 (2007). He must allege "enough facts to state a claim to relief that is plausible on its face," and the facts "must be enough to raise a right to relief above the speculative level." *Id.* at 1965, 1974. In considering a 12(b)(6) motion, the court "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005) (quotations and citation omitted). Inasmuch as plaintiff is a *pro se* litigant, the court will "construe the complaint more liberally than it would formal pleadings drafted by lawyers."

4

*Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990) (*citing Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 175 (1980)).

*Count II (Due Process)*

In count II of his complaint, Mitchell alleges that Mott and Benton violated the Fourteenth Amendment of the U.S. Constitution and § 1983 by upholding his dismissal from the nursing program without a proper investigation.[2]   He also alleges that Mott and Benton "violated the disability discrimination laws or [sic] of the state of Alabama."  The court will construe count II as attempting to assert a claim that Mott and Benton violated Mitchell's right to procedural due process by terminating him from the nursing program without a hearing.[3]  While Mitchell specifically refers to Mott and Benton as acting in their official capacities in paragraph 29 under the heading for count II, he lists them both individually and in their official capacities in paragraphs 8 and 9 under the heading "parties."   In accordance with Mitchell's indication at oral argument and in his response to the motion that he intended to sue these two defendants both individually and in their official capacities, the court will give Mitchell the benefit of the doubt and will construe his inartful complaint as presenting § 1983

---

[2] "§ 1983 is not a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Conner*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870 (1989) (quotation marks omitted).

[3] In paragraph eight of his response to the motion to dismiss, Mitchell disclaims any intent to state a substantive due process claim.

claims against Mott and Benton both in their official and individual capacities.

Defendants Mott and Benton argue that they are immune from Mitchell's claims against them in their official capacities by virtue of the sovereign immunity provided by the Eleventh Amendment, which prohibits suits against a state brought by its own citizens or by citizens of another state. *See Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S. Ct. 955, 962 (2001). Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, nor has Alabama waived its immunity to such claims. *See Cross v. Alabama*, 49 F.3d 1490, 1502 (11th Cir. 1995). A state university or college, like Bevill State, is entitled to Eleventh Amendment immunity. *See Univ. of S. Ala. v. Amer. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999). Additionally, where a plaintiff asks for monetary damages from a state employee in his or her official capacity, "the state is considered the real party in interest because an award of damages would be paid by the state." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990). Therefore, Mott and Benton are immune from Mitchell's money damages claims insofar as brought against them in their official capacities.

Official capacity actions for prospective relief under § 1983 are not treated as actions against the state and are, thus, not barred by the Eleventh Amendment. *See Cross*, 49 F.3d at 1503; *see*

*also Ex parte Young*, 209 U.S. 123, 156, 28 S. Ct. 441, 452 (1908).
The court construes Mitchell's prayers for injunctive and
declaratory relief as requests for reinstatement to the nursing
program. Reinstatement constitutes prospective relief. *See Cross*,
49 F.3d at 1503; *see also Collier v. Clayton County Cmty. Serv.
Bd.*, 236 F. Supp. 2d 1345, 1364 (N.D. Ga. 2002). Therefore, the
official capacity claims against Mott and Benton survive to the
extent they seek injunctive and declaratory relief in the form of
reinstatement.[4]   Whether either official has the authority to
reinstate Mitchell is another question.  The authority, and thus
the proper entity to enjoined, seems to be Bevill State, but it is
not named in count II.

Mott and Benton also argue that the individual capacity claims
against them should be dismissed for failure to state a claim
and/or because both defendants are entitled to qualified immunity.

Qualified immunity shields government officials executing
discretionary responsibilities from suit insofar as their conduct
does not violate clearly established statutory or constitutional
rights of which a reasonable person would have known. *See Courson
v. McMillian*, 939 F.2d 1479, 1486 (11th Cir. 1991).  "Because
qualified immunity is a defense not only from liability, but also

---

[4] Footnote two of the motion to dismiss alleges, without pointing to any
supporting documentation, that Benton is no longer employed by Bevill State
and, as such, cannot be subject to Mitchell's requests for prospective relief.
However, because the court is limited to the facts found within the four
corners of the complaint on a Rule 12(b)(6) motion, the present procedural
posture does not allow for Benton's summary dismissal.

from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003) (quotation marks and citation omitted).  A public official who asserts a defense of qualified immunity must establish that she was "engaged in a 'discretionary function' when [she] performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (citation omitted).  Based on the allegations in the complaint, it is clear that the conduct at issue (upholding Mitchell's dismissal) was within the scope of defendants' discretionary authority.

Inasmuch as Mott and Benton were performing a discretionary function when they did what Mitchell complains of, the burden shifts to Mitchell to show that qualified immunity is not appropriate. *See Epps v. Watson*, 492 F.3d 1240, 1243 (11th Cir. 2007).  Mitchell must adequately allege facts to demonstrate that defendants violated one or more of his constitutional rights and must show that the violation was clearly established. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007).  Given the heightened pleading standard that applies to § 1983 individual capacity claims, Mitchell has failed to state a procedural due process claim.[5]  He never alleges the existence of any sort of

---

[5] In his response to the motion to dismiss, Mitchell accuses defendants of attempting to convert an equal protection claim into a substantive due process claim.  However, the allegations listed in paragraphs 28-29 of

constitutionally-protected property or liberty interest.  In fact, the phrase "due process" is nowhere to be found in the complaint. However, assuming *arguendo* that Mitchell had sufficiently pled a due process violation under the heightened pleading standard, the question would then become whether the state of the law at the time of the alleged violation gave defendants fair warning that their treatment of plaintiff was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002); *see also Irvin*, 496 F.3d at 1199 ("A motion to dismiss a complaint on qualified immunity grounds will be granted if the complaint fails to allege the violation of a clearly established constitutional right.") (quotation marks and citation omitted); *Epps*, 492 F.3d at 1245 ("'Clearly established law' is law that is sufficiently defined so as to provide public officials with 'fair notice' that the conduct alleged is prohibited.").

Mitchell has failed to carry his burden of proving that the alleged constitutional violation was "clearly established" because

---

Mitchell's complaint (the section corresponding to his § 1983 claims against Mott and Benton), cannot be construed as an equal protection claim.  While *pro se* complaints must be liberally construed, they still must comply with the rules governing the proper forms of pleadings. *See Washington v. Bauer*, 149 Fed. Appx. 867, 870 (11th Cir. 2005).  There is also a heightened pleading standard when a plaintiff brings a § 1983 complaint against officials acting in their individual capacities. *See id.*  Even in cases with *pro se* plaintiffs, the court cannot "infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity." *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998).  A plaintiff should not be permitted, through the use of shotgun pleading, to strip government officials of the protections provided by qualified immunity. *See Marx v. Gumbinner*, 855 F.2d 783, 792 (11th Cir. 1988).  The court declines to scour plaintiff's complaint in an effort to piece together enough allegations, facts, and inferences to state a cognizable Fourteenth Amendment claim.

he has not pointed to any precedent[6] to show that he had a constitutionally-protected interest in continued enrollment in the nursing program at Bevill State when he was terminated.   As defendants correctly point out, courts have only assumed *arguendo* the existence of a constitutionally-protected interest in enrollment at a postsecondary educational institution. *See, e.g., Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223, 106 S. Ct. 507, 512 (1985) (assuming without deciding that a student has a property interest in continued enrollment in a university medical program); *Bd. of Curators v. Horowitz*, 435 U.S. 78, 84, 98 S. Ct. 948, 952 (1978) (declining to decide whether a student's dismissal from a university medical program deprived her of a liberty interest in pursuing a medical career); *Nash v. Auburn Univ.*, 812 F.2d 655, 660 (11th Cir. 1987) (assuming without deciding that student had property and liberty interest in continued enrollment in state university); *Haberle v. Univ. of Ala.*, 803 F.2d 1536, 1539 n.1 (11th Cir. 1986) (expressing doubt about the existence of a property interest in continued enrollment in a graduate chemistry program).

An assumption by the Supreme Court or by the Eleventh Circuit for the sake of argument cannot clearly establish the law for

---

[6] Constitutional provisions, federal statutes, and decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the Alabama Supreme Court are all capable of clearly establishing the law. *See Irvin*, 496 F.3d at 1199 n.6.

10

purposes of qualified immunity. *See Hamil v. Vertrees*, 2001 WL 135716 at *9 (M.D. Ala. Jan. 1, 2001). Therefore, inasmuch as Mitchell has failed to prove the existence of a clearly established constitutional right to continued enrollment in a postsecondary education program, Mott and Benton are entitled to qualified immunity from Mitchell's claims against them in their individual capacities.

*Count III (Invasion of Privacy)*

Mitchell also presents a tort claim for invasion of privacy against Reeves. Mitchell alleges, *inter alia*, that Reeves forced him to reveal his disability and his medications to her in a public forum. The Alabama Supreme Court has held that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Johnson v. Fuller*, 706 So. 2d 700, 702 (Ala. 1997) (*quoting* Restatement (Second) of Torts § 652B (1977)). Plaintiff's allegations with respect to his being required to reveal private medical information to school officials and other students in order to gain admission and/or maintain enrollment in the nursing program are sufficient to state a cognizable invasion of privacy claim. *See generally Hogin v. Cottingham*, 533 So. 2d 525 (Ala. 1988); *Phillips v. Smalley Maint. Servs.*, Inc., 435 So. 2d 705 (Ala.

1983).  Although Reeves invokes state-agent immunity, the record is not yet sufficiently developed to determine whether she is eligible for the protections provided by such immunity.  *See Ex parte City of Tuskegee*, 932 So. 2d 895, 901-03 (Ala. 2005); *see also Ryan v. Hayes*, 831 So. 2d 21, 32 (Ala. 2002) ("It is the rare case involving the defense of state agent immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6).") (internal quotations and punctuation omitted).  Accordingly, the invasion of privacy claim against Reeves will go forward.

### Conclusion

For the forgoing reasons, defendants' 12(b)(6) motion will be granted in part and denied in part by separate order.

DONE this 5th day of May, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE